United States District Court
Southern District of Texas

**ENTERED**

January 21, 2021

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANTONIO ANDREA JOHNSON, | § | |
| TDCJ #2114392, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-1568 |
| | § | |
| OFFICER CHANNING HILL and | § | |
| OFFICER TEROJI KELLY, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

State inmate Antonio Andrea Johnson (TDCJ #2114392) has filed a Prisoner's Civil Rights Complaint under 42 U.S.C. § 1983 ("Complaint") (Docket Entry No. 1), alleging that two detention officers used excessive force against him while he was confined at the Harris County Jail. At the court's request Johnson provided additional details about his claims in Plaintiff's More Definite Statement ("Plaintiff's MDS") (Docket Entry No. 10), and the Harris County Attorney's Office provided an Amicus Curiae Harris County Attorney's Office's Martinez Report with administrative records under Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1987) ("Martinez Report") (Docket Entry No. 14). Subsequently, Johnson filed an amended Prisoner's Civil Rights Complaint ("Amended Complaint") (Docket Entry No. 23), identifying Officer Channing Hill and Officer Teroji Kelly as the officers who assaulted him.

Now pending before the court is Defendants Detention Officer Channing Hill and Detention Officer Teroji Kelly's Motion for Summary Judgment ("Defendants' MSJ") (Docket Entry No. 48). Johnson has filed plaintiff's Response to Defendants' Summary Judgment Motion ("Plaintiff's Response") (Docket Entry No. 52, pp. 6-8), which includes handwritten and typed versions of:

> Declaration In Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Declaration in Opposition") (pp. 9-11);
>
> Plaintiff's Statement of Disputed Factual Issues (pp. 12-13);
>
> Plaintiff's Brief In Opposition to Defendants' Summary Judgment Motion ("Plaintiff's Brief in Opposition") (pp. 14-18); and
>
> Declaration/Letter of Antonio Andrea Johnson (p. 19).[1]

After considering all of the pleadings, exhibits, and the applicable law, the court will grant Defendants' MSJ and will dismiss this case for the reasons set forth below.

## I.  Background

Johnson alleges that Officers Hill and Kelly assaulted him on January 21, 2017, while he was a pretrial detainee at the Harris County Jail.[2]  Johnson contends that he was assaulted for no

---

[1]The Clerk's Office filed all of the submissions included with Plaintiff's Response as one instrument within Docket Entry No. 52. The court will refer to these submissions by the specific name assigned to them by Johnson.

[2]Complaint, Docket Entry No. 1, p. 4; Plaintiff's MDS, Docket Entry No. 10, pp. 2-3.  For purposes of identification, all page (continued...)

reason while his hands were handcuffed behind his back and that he sustained a deep laceration above his right eye after Officer Hill slammed his face into a brick wall during that incident.[3]   Johnson claims that Officers Hill and Kelly continued to assault him while escorting him to the Jail medical clinic for treatment, punching and kicking him the entire time.[4]   As a result, Johnson alleges that the defendants "reinjured [his] broken left [ankle] that had two pins holding it in place[,]" caused cuts on his wrists from the handcuffs, and inflicted unspecified "damage" to his left shoulder and back.[5]   Johnson seeks compensatory and punitive damages for the violation of his constitutional rights under the Eighth Amendment.[6]

The defendants move for summary judgment, arguing that they are entitled to qualified immunity from Johnson's claims because he cannot establish that they engaged in wrongful conduct that violated clearly established law or that they acted unreasonably under the circumstances.[7]   In support of the motion, the defendants

---

[2](...continued)
numbers refer to the pagination imprinted by the court's electronic filing system, CM/ECF.

[3]Amended Complaint, Docket Entry No. 23, p. 3; Plaintiff's MDS, Docket Entry No. 10, p. 4.

[4]Plaintiff's MDS, Docket Entry No. 10, pp. 3, 4-5.

[5]Id. at 4.

[6]Amended Complaint, Docket Entry No. 23, p. 4.

[7]Defendants' MSJ, Docket Entry No. 48, pp. 7-16.

provide   affidavits   and   records   from   the   administrative
investigation of the incident, which are summarized below.

On  January 21, 2017,  detention officers were conducting a
routine search of the cellblock where Johnson was located.[8]   When
the search took place Johnson was facing three counts of aggravated
robbery and one count of assault.[9]   He was also assigned to a
maximum security administrative separation cell in the "supermax"
housing unit as the result of an attempted escape.[10]

Officers Hill and Kelly were working as roving detention
officers when they were called to assist with the search of
Johnson's cell.[11]  Two detention officers (Officer Brentlinger and
Officer Williams) searched Johnson's person and then placed him in
handcuffs outside of his cell.[12]   Johnson was then ordered to stand
quietly and face the wall while officers searched his cell for

---

[8]Affidavit of Channing Hill ("Hill Affidavit"), Exhibit C to
Defendants' MSJ, Docket Entry No. 48-3, p. 2.

[9]JIMS Booking Inquiry, Exhibit A to Defendants' MSJ, Docket
Entry No. 48-1, p. 27.

[10]Justice Information and Management System Caution Literal
Display Screen, Exhibit A to Defendants' MSJ, Docket Entry
No. 48-1, p. 28.

[11]Hill Affidavit, Exhibit C to Defendants' MSJ, Docket Entry
No. 48-3, p. 2; Affidavit of Detention Officer Teroji Kelly ("Kelly
Affidavit"), Exhibit D to Defendants' MSJ, Docket Entry No. 48-4,
p. 2.

[12]Detention Command - Inmate Offense Report, Exhibit A to
Defendants' MSJ, Docket Entry No. 48-1, pp. 4-5 (Statements of
Officers Brentlinger and Williams).

-4-

contraband.[13]  Officers Brentlinger, Williams, Marshall, Hill, and Kelly conducted the search of Johnson's cell.[14]  Officer Vasquez monitored Johnson while the other officers searched Johnson's property.[15]

Johnson became agitated during the search and disrupted the officers' efforts by turning away from the wall several times.[16] Johnson was concerned that the officers were throwing away legal papers or commissary items that he had purchased and he objected to the search.[17]  Officer Brentlinger ordered Johnson to face the wall and remain silent until the officers were finished with the search.[18]  Officer Hill repeated similar orders, directing Johnson multiple times to face the wall.[19]

According to Officers Brentlinger and Vasquez, Johnson continued to disobey orders to stand quietly while facing the wall and stop disrupting the search.[20]  When Officer Hill again ordered Johnson to turn and face the wall, Officer Kelly heard Johnson

---

[13]Id. at 4 (Statement of Officer Brentlinger).

[14]Id. at 4-5 (Statements of Officers Brentlinger, Hill, Kelly, Marshall, and Williams).

[15]Id. at 5 (Statement of Officer Vasquez).

[16]Id. at 4 (Statement of Officer Brentlinger).

[17]Id.

[18]Id. at 4 (Statement of Officer Brentlinger).

[19]Id. at 4-5 (Statements of Officers Brentlinger and Vasquez).

[20]Id.

-5-

respond:  "I'm not scared of you bitch ass nigga, I don't care if you ask me nicely," emphasizing that he wanted to make sure none of the officers discarded his legal papers.[21]   When Officer Hill repeated the order to stand facing the wall, Johnson became more aggressive, exclaiming:  "Man Fuck you bitch nigga!  Who the fuck are you?  I'll beat your ass talking to me like that!"[22]  According to Officer Hill, Johnson then laughed and stated, "Man I ain't facing no wall."[23]  Officer Hill "grabbed Inmate Johnson's left arm and turned him around and placed him on the wall" after Johnson refused to comply and attempted to head-butt him.[24]  Officer Kelly noticed that Johnson had a "small cut over his right eye" and escorted him to the clinic along with Officer Hill.[25]

According to Officer Kelly, Johnson became combative once they arrived at the clinic, aggressively pulling away from Officer Hill and demanding that his handcuffs be removed.[26]  Officer Hill also observed that Johnson continued to behave in a belligerent manner and to use threatening language on the way to the clinic, stating: "Watch when these fucking cuffs come off bitch I'm going to beat

---

[21]<u>Id.</u> at 5 (Statement of Officer Kelly).

[22]<u>Id.</u> at 2 (Statement of Officer Hill).

[23]<u>Id.</u>

[24]<u>Id.</u>

[25]<u>Id.</u> at 5 (Statement of Officer Kelly).

[26]<u>Id.</u>

-6-

your ass."[27]   Officer Hill ordered Johnson, who was physically
resisting, to calm down.[28]   When a ranking officer arrived, Officer
Hill informed Johnson that he would be written up for a major
disciplinary infraction for violating the rule against "Assault of
Any Staff Member," which states that "No inmate shall strike,
physically touch or cause contact with any staff member by any
means or make any legitimate attempt to do so."[29]

Johnson submitted a grievance and more than one statement
regarding the assault that occurred outside his cell on January 21,
2017.[30]   In all three statements Johnson admitted turning from the
wall and objecting that officers were discarding legal material,
mail, or commissary items from his property.[31]   In his initial
statement Johnson admitted talking back to Officer Hill after Hill
ordered him to face the wall.[32]   Johnson stated that Officer Hill

---

[27]Id. at 2 (Statement of Officer Hill).

[28]Id.

[29]Id.

[30]Statement from Antonio Johnson, dated January 21, 2017
("1/21/17 Johnson Statement"), Exhibit A to Defendants' MSJ, Docket
Entry No. 48-1, p. 1; Inmate Complaint Form, Exhibit A to
Defendants' MSJ, Docket Entry No. 48-1, pp. 21-22; Harris County
Sheriff's Office ("HCSO") Non-Employee Sworn Statement of Antonio
Johnson ("Johnson's Sworn Statement"), Exhibit A to Defendants'
MSJ, Docket Entry No. 48-1, pp. 23-24.

[31]1/21/17 Johnson Statement, Exhibit A to Defendants' MSJ,
Docket Entry No. 48-1, p. 1; Inmate Complaint Form, Exhibit A to
Defendants' MSJ, Docket Entry No. 48-1, p. 21; Johnson's Sworn
Statement, Exhibit A to Defendants' MSJ, Docket Entry No. 48-1,
p. 24.

[32]1/21/17 Johnson Statement, Exhibit A to Defendants' MSJ,
Docket Entry No. 48-1, p. 1.

then "slammed [his] face into the wall with a lot of force," causing Johnson to become dizzy.[33]   Johnson also stated that Officers Hill and Kelly continued to assault him all the way to the clinic.[34]

Still photographs taken after the incident show that Johnson sustained a small laceration above his right eye and that he had blood running down his face onto the front of his shirt.[35]   The physician who examined Johnson at the clinic observed that he had a two-centimeter laceration on his right upper eyelid, which was treated with stitches and Ibuprofen for pain.[36]   Johnson reported no other issues and, other than elevated blood pressure, none were observed during the examination.[37]   Johnson was seen in the clinic the following day, January 22, 2017, where he reported seeing blood when he blew his nose and nasal congestion.[38]   The nurse treated him for a cold ("Rhinitis") and prescribed a "nasal steroid."[39]   She also gave him some ointment to apply to the laceration above his

---

[33]Id.

[34]Inmate Complaint Form, Exhibit A to Defendants' MSJ, Docket Entry No. 48-1, p. 21; Johnson's Sworn Statement, Exhibit A to Defendants' MSJ, Docket Entry No. 48-1, p. 24.

[35]Photographs, Exhibit A to Defendants' MSJ, Docket Entry No. 48-1, pp. 9-12.

[36]HCSO Health Services Progress Note, Docket Entry No. 49, p. 4.

[37]Id. at 3-6.

[38]HCSO Health Services Progress Note, Docket Entry No. 49, p. 8.

[39]Id. at 8-9.

right eye.[40]  Johnson had no other healthcare complaints.[41] He was seen in his cell by nurses conducting rounds on January 22 and 23, but he reported no healthcare complaints.[42]

Johnson also reported no healthcare complaints at a mental health examination in the clinic on January 23, 2017, although he reported feeling "irritated" about the altercation he had with an officer during the search of his cell.[43]  Johnson acknowledged that by turning to look at the search he "triggered the officer," who Johnson believed was new to the Jail and was "trying to prove himself[.]"[44] Johnson added that in the future he planned to "stay quiet and only look at the wall as opposed to directing his eyes at his belongings."[45]

Jail administrators reviewed the use-of-force incident that occurred on January 21, 2017.[46]  After considering the witness statements and medical records that showed only a minor injury, the

---

[40]Id. at 9, 10.

[41]Id. at 8-10.

[42]HCSO Health Services Rounds, Docket Entry No. 49, pp. 12, 14-15.

[43]HCSO Health Services Progress Note, Docket Entry No. 49, p. 16.

[44]Id.

[45]Id.

[46]Use of Force IAD #UOF2017-00036, Exhibit A to Defendants' MSJ, Docket Entry No. 48-1, pp. 14-20.

Jail administrator concluded that the use of force was reasonable and did not violate the law or Jail policy.[47]

On January 23, 2017, Johnson was formally charged with violating Jail disciplinary rules for attempting to assault a staff member during the incident that occurred on January 21, 2017.[48]  On February 2, 2017, Johnson entered a guilty plea and was convicted of the aggravated robbery and assault charges against him in state court.[49]  On February 23, 2017, Johnson was transferred to TDCJ, where he remains incarcerated.[50]

## II.   Standards of Review

### A.   The Motion for Summary Judgment

The defendants have filed a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.[51]  Under this rule a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (2018); see also Celotex Corp. v. Catrett, 106 S. Ct.

---

[47]Id. at 16.

[48]Justice Information and Management System Caution Literal Display Screen, Exhibit A to Defendants' MSJ, Docket Entry No. 48-1, p. 28.

[49]Case Information, Exhibit A to Defendants' MSJ, Docket Entry No. 48-1, p. 30.

[50]Plaintiff's MDS, Docket Entry No. 10, p. 1.

[51]Defendants' MSJ, Docket Entry No. 48, p. 11.

2548, 2552 (1986).  A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  Id.

If the movant demonstrates an "absence of evidentiary support in the record for the nonmovant's case," the burden shifts to the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial." Sanchez v. Young County, Texas, 866 F.3d 274, 279 (5th Cir. 2017) (citing Cuadra v. Houston Indep. Sch. Dist., 626 F.3d 808, 812 (5th Cir. 2010)); see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).  In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010) (internal quotation marks and citation omitted).

The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.  See Diamond Offshore Co. v. A&B Builders, Inc., 302 F.3d 531, 545 n.13 (5th Cir. 2002).  Likewise, the non-movant cannot avoid summary judgment by presenting "'[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation.'" Jones v. Lowndes County, Mississippi,

678 F.3d 344, 348 (5th Cir. 2012) (quoting <u>TIG Insurance Co. v.</u> <u>Sedgwick James of Washington,</u> 276 F.3d 754, 759 (5th Cir. 2002)); <u>see also Little v. Liquid Air Corp.,</u> 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a non-movant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence). Further, the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." <u>Adams v. Travelers Indemnity Co. of Connecticut,</u> 465 F.3d 156, 164 (5th Cir. 2006) (quotation omitted).

The plaintiff represents himself in this case, and courts are required to give a <u>pro se</u> litigant's contentions a liberal construction. <u>See Erickson v. Pardus,</u> 127 S. Ct. 2197, 2200 (2007) (citing <u>Estelle v. Gamble,</u> 97 S. Ct. 285, 292 (1976)); <u>see also</u> <u>Haines v. Kerner,</u> 92 S. Ct. 594, 595-96 (1972) (noting that allegations in a <u>pro se</u> complaint, however inartfully pleaded, are held to less stringent standards than formal pleadings drafted by lawyers). Nevertheless, a <u>pro se</u> litigant is not excused from meeting his burden of proof by specifically referring to evidence in the summary judgment record and setting forth facts showing that there is a genuine issue of material fact remaining for trial. <u>See</u> <u>Outley v. Luke & Associates, Inc.,</u> 840 F.3d 212, 217 (5th Cir. 2016) (citations omitted); <u>see also</u> <u>Bookman v. Shubzda,</u> 945 F. Supp. 999, 1004 (N.D. Tex. 1996) (citations omitted).

## B. Qualified Immunity

The defendants have asserted qualified immunity from suit.[52] Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. See Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 106 S. Ct. 1092, 1096 (1986). A plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (citation omitted). If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is nevertheless appropriate "because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'" Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010) (quoting Collins v. Ainsworth, 382 F.3d 529, 537 (5th Cir. 2004)).

"A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." King v. Handorf, 821 F.3d 650, 653 (5th Cir. 2016) (internal quotation marks omitted). When a defendant pleads qualified immunity, the burden shifts to the

---

[52]Defendants' MSJ, Docket Entry No. 48, p. 6.

plaintiff, "who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." Dyer v. Houston, 964 F.3d 374, 380 (5th Cir. 2020) (citations and internal quotation marks omitted). "Qualified immunity is a complete defense, and [a defendant is] entitled to summary judgment on the basis of qualified immunity unless [the plaintiff] can show triable issues as to whether [the defendant] violated a clearly established right of which a reasonable officer would have been aware." Brewer v. Hayne, 860 F.3d 819, 824 (5th Cir. 2017). A plaintiff does not satisfy this burden with conclusory allegations based on speculation or unsubstantiated assertions of wrongdoing. See Mitchell v. Mills, 895 F.3d 365, 370 (5th Cir. 2018); Williams-Boldware v. Denton County, Texas, 741 F.3d 635, 643-44 (5th Cir. 2014).

## III.  Discussion

### A.  Johnson's Eighth Amendment Claims

As noted above, Johnson alleges that the defendants used excessive force against him in violation of the Eighth Amendment, which prohibits cruel and unusual punishment, i.e., the "unnecessary and wanton infliction of pain." Wilson v. Seiter, 111 S. Ct. 2321, 2323 (1991) (quoting Estelle v. Gamble, 97 S. Ct. 285, 291 (1976)).[53] The defendants correctly note that the Eighth

---

[53]Amended Complaint, Docket Entry No. 23, p. 4; Plaintiff's Response, Docket Entry No. 52, pp. 6-7.

Amendment does not apply to excessive-force claims involving pretrial detainees.[54] While the Eighth Amendment protects convicted felons, pretrial detainees are protected by the Fourteenth Amendment Due Process Clause "from the use of excessive force that amounts to punishment." Graham v. Connor, 109 S. Ct. 1865, 1871 n.10 (1989) (citing Bell v. Wolfish, 99 S. Ct. 1861, 1871-74 (1979)). Because the Eighth Amendment does not apply, the court will grant the defendants' request for summary judgment on that claim and address Johnson's allegations of excessive force under the Fourteenth Amendment.

## B. Johnson's Claims Under the Fourteenth Amendment

To defeat qualified immunity and prevail on a claim under the Fourteenth Amendment a prisoner must show that force was "purposely or knowingly used against him" in a manner that was "objectively unreasonable." Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015) (clarifying that "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one"); see also Thompson v. Beasley, 309 F.R.D. 236, 246-47 (N.D. Miss. 2015) (calling into question pre-Kingsley precedent from the Fifth Circuit) (citations omitted). A pretrial detainee can prevail only if he shows that the defendants applied force in a manner that was not "rationally related to a legitimate nonpunitive governmental purpose" or that the actions were "excessive in relation to that

---

[54]Defendants' MSJ, Docket Entry No. 48, p. 14.

purpose." Kingsley, 135 S. Ct. at 2473 (quoting Bell, 99 S. Ct. at 1886).

Whether an officer's actions are objectively reasonable "turns on the 'facts and circumstances of each particular case.'" Kingsley, 135 S. Ct. at 2473 (quoting Graham, 109 S. Ct. at 1872). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. The "calculus of reasonableness" must take into account the fact that officers "are often forced to make split-second judgments — circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." Graham, 109 S. Ct. at 1872. A reviewing court must also take into account policies and practices judged necessary by jail officials for the legitimate interests of preserving internal order, discipline, and institutional security. Kingsley, 135 S. Ct. at 2473 (citing Bell, 99 S. Ct. at 1878).

To determine whether a use of force was objectively reasonable or unreasonable, a reviewing court may consider the following non-exclusive list of factors: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the defendant; and (6) whether the plaintiff was actively resisting. See Kingsley,

135 S. Ct. at 2473 (citation omitted).  Johnson's claims against Officers Hill and Kelly are analyzed separately below.

1.  <u>Officer Hill</u>

In addition to his own affidavit, which is consistent with the statement he gave after the use of force occurred on January 21, 2017, Officer Hill presents statements from several officers who observed that Johnson disobeyed repeated verbal commands and caused a disruption by refusing to stand quietly at the wall as directed.[55] Officer Hill admits that he used force, explaining that he grabbed Johnson's left arm and placed him against the wall using a technique described as "soft empty hand control" to obtain Johnson's compliance and protect himself after Johnson attempted to head butt him.[56]  Hill denies striking or assaulting Johnson at any time in spite of the attempted head butt, the verbal abuse, and the threatening language that Johnson used.[57]

Johnson asserts that there is a fact issue about whether he was disobeying orders by refusing to face the wall and remain silent before he was assaulted.[58]  Because he was "not resisting"

---

[55]Hill Affidavit, Exhibit C to Defendants' MSJ, Docket Entry No 48-3, pp. 2-3; Detention Command - Inmate Offense Report, Exhibit A to Defendants' MSJ, Docket Entry No. 48-1, pp. 2, 4-5 (Statements of Officers Hill, Brentlinger, Kelly, and Vasquez).

[56]Hill Affidavit, Exhibit C to Defendants' MSJ, Docket Entry No. 48-3, pp. 2-3.

[57]<u>Id.</u> at 2.

[58]<u>See</u> Plaintiff's Statement of Disputed Factual Issues, included in Docket Entry No. 52, p. 12; Plaintiff's Brief in Opposition, included in Docket Entry No. 52, pp. 14-15.

or disobeying, Johnson also argues that Officer Hill needlessly used force by slamming his face against the wall and assaulting him on the way to the medical clinic.[59]

On summary judgment all evidence is viewed in the light most favorable to the non-movant. Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam) (reciting the well established "axiom that in ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'") (quoting Anderson, 106 S. Ct. at 2513). Johnson's claim that he was not disobeying orders or causing a disturbance is made in unsworn pleadings, however, which are not competent summary judgment evidence. See Jones v. Anderson, 721 F. App'x 333, 334-35 (5th Cir. 2018) (per curiam) (citing Larry v. White, 929 F.2d 206, 211 n.12 (5th Cir. 1991) ("Unsworn pleadings, memoranda, or the like are not, of course, competent summary judgment evidence.") (internal quotations omitted)).  More importantly, Johnson's unsworn assertion that he was not disobeying orders when the use of force occurred conflicts with admissions previously made by him and with the sworn declaration that he provides under 28 U.S.C. § 1746.  In the statement that he gave on the day of the incident Johnson admitted that he was talking back to Officer Hill before the force was used.[60]   In his sworn

---

[59]Plaintiff's Brief in Opposition, included in Docket Entry No. 52, pp. 14-16.

[60]1/21/17 Johnson Statement, Exhibit A to Defendants' MSJ, Docket Entry No. 48-1, p. 1.

declaration Johnson also admits that he continued talking after Officer Brentlinger told him to stand against the wall outside his cell and that he objected to the search when Officer Hill "came out of the cell behind [him] and placed his hand on the back of [his] head and slam[med] [his] face against the wall."[61]

Although Johnson disagrees that his refusal to stand at the wall quietly warranted a use of force, statements from the officers who were conducting the cell search reflect that his agitated demeanor and continuous objections were disruptive.[62] Disobeying orders poses a threat to the order and security of an institution. See Minix v. Blevins, Civil No. 6:06-306, 2007 WL 1217883, at *24 (E.D. Tex. April 23, 2007) (recognizing that even where a prisoner believes an order to be "unjustified and improper, this does not give him the right to disobey them at his whim"). Courts have recognized that a pretrial detainee's refusal to comply with repeated orders justifies the use of some degree of force by officers. See Gonzales v. Rowe, Civil No. 5:20-052-BQ, 2020 WL 4811005, at *3 (N.D. Tex. July 27, 2020) (citing Calhoun v. Wyatt, Civil Action No. 6:11-4, 2013 WL 1882367, at *6 (E.D. Tex. May 2, 2013) (noting that inmate's refusal to obey orders "set the stage for the use of force")). Because Johnson was an inmate

---

[61]Plaintiff's Declaration in Opposition, included in Docket Entry No. 52, p. 10.

[62]Detention Command - Inmate Offense Report, Exhibit A to Defendants' MSJ, Docket Entry No. 48-1, pp. 4-5 (Statements of Officers Brentlinger, Kelly, and Vasquez).

assigned to the highest security level at the Jail, the officers reasonably perceived that Johnson's disruptive actions were a threat despite the fact that he was restrained by handcuffs at the time. See Rios v. McBain, Civil No. 5:04-84, 2005 WL 1026192, at *7 (E.D. Tex. April 28, 2005) (noting that "open defiance of orders plainly poses a threat to the security of the institution, regardless of whether or not the defiance is emanating from within a locked cell").

The Supreme Court has observed that "[e]nsuring security and order at [an] institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both." Bell, 99 S. Ct. at 1886.   The Supreme Court has also made clear that "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson v. McMillian, 112 S. Ct. 995, 1000 (1992) (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights")).   The use of force applied by Officer Hill was limited to the act of placing Johnson against the wall with soft open-hand control, which is the lowest level of force available for use by an officer and is not considered an excessive tactic when used to gain an unruly inmate's compliance.[63]

---

[63]Use of Force - Data Collection, Exhibit A to Defendants' MSJ, Docket Entry No. 48-1, p. 8 (listing the "Open Hand Control" to restrain an inmate as the lowest level of force, whereas the discharge of a firearm is listed as the highest level).

See Cain v. Ambriz, 114 F. App'x 600, 601 (5th Cir. Sept. 28, 2004)
(per curiam) (using an open hand to the face to push an inmate into
his cell was not objectively unreasonable given that he failed to
comply with the officer's requests); Nazerzadeh v. Harris County,
Civil Action No. H-08-0499, 2010 WL 3817149, at *30 (S.D. Tex.
Sept. 27, 2010) (rejecting an excessive-force claim by a pretrial
detainee and observing that the use of "soft or open-hand control"
to subdue a prisoner is "a low degree of force, designed to respond
to low levels of resistance").

Although Johnson claims that the amount of force was
excessive, his allegation that Officer Hill violently slammed his
face into the wall is not supported by the medical records, which
show that he sustained no more than a small laceration above his
right eye that was treated in the clinic with stitches and
Ibuprofen.[64] Johnson did not report dizziness or any other
symptoms.[65] He did not request care for a bloody nose until hours
after the incident when he was seen in the clinic and treated for
nasal congestion.[66] Johnson did not report any other injuries or
issues during follow-up examinations at the Jail and he presents no
evidence showing that he suffered any other injury as a result of
the use of force. Evidence that Johnson sustained only a minor cut

---

[64]HCSO Health Services Progress Note, Docket Entry No. 49, p. 4.

[65]See id. at 3-6.

[66]HCSO Health Services Progress Note, Docket Entry No. 49,
pp. 8-9.

near his eye weighs against a finding of excessive force.  See
Thompson, 309 F.R.D. at 247-48 (rejecting an excessive-force claim
by a pretrial detainee where the only injury reported was a "minor
cut" near his eye); Renthrope v. Toffton, Civil Action No. 05-1390,
2007 WL 37999, at * 4 n.6 (W.D. La. Jan. 4, 2007) ("[T]he absence
of any sign of injury other than a minor cut" weighed in favor of
the officer and against a finding of excessive force.).

Jail administrators reviewed the January 21, 2017, incident
and concluded that the use of force was reasonable and did not
violate the law or Jail policy.[67]  To the extent that Officer Hill
used limited force for the legitimate purpose of obtaining
Johnson's compliance with repeated orders to maintain institutional
order and security, these factors weigh in favor of finding that
the alleged use of force was objectively reasonable.  See Kingsley,
135 S. Ct. at 2473.

Absent evidence that force was used in a manner unrelated to
a legitimate nonpunitive purpose or that the force used was
excessive to the need, Johnson fails to show that Officer Hill's
actions were objectively unreasonable in these circumstances.  See
Tennyson v. Villarreal, 801 F. App'x 295 (5th Cir. 2020) (reversing
denial of summary judgment for officers who took a noncompliant
pretrial detainee to the ground in order to handcuff him behind his
back).  Because Johnson has failed to raise a genuine fact issue

---

[67]Use of Force IAD #UOF2017-00036, Exhibit A to Defendants'
MSJ, Docket Entry No. 48-1, p. 16.

about whether excessive force was used in violation of clearly established law, Officer Hill is entitled to qualified immunity.

### 2.   Officer Kelly

The record contains two statements from Johnson that implicate Officer Kelly in the initial use of force that occurred outside of his cell on January 21, 2017.[68]   However, Johnson's most recent sworn declaration states that Officer Hill is the only one who used force to place him on the wall after he disobeyed orders by continuing to behave in a disruptive manner.[69]   Based on this record, Johnson fails to establish that Officer Kelly was personally involved in the initial use of force.

Although Johnson also alleges that Officer Kelly used excessive force while helping Officer Hill escort Johnson to the clinic, the record does not reflect that Johnson suffered an injury consistent with his claim that he was punched and kicked repeatedly by the officers on the way to the clinic.   The medical provider who treated Johnson in the clinic observed only a small laceration above Johnson's right eye.   Johnson reported no other injuries that are consistent with being repeatedly punched and kicked by the officers who escorted him to the clinic.   Because Johnson does not

---

[68]See Inmate Complaint Form, Exhibit A to Defendants' MSJ, Docket Entry No. 48-1, p. 21; Johnson's Sworn Statement, Exhibit A to Defendants' MSJ, Docket Entry No. 48-1, p. 24.

[69]See Plaintiff's Declaration in Opposition, included in Docket Entry No. 52, p. 10.

point to evidence in the record showing that Officer Kelly used excessive force against him in a manner that resulted in any injury, he has not established that Officer Kelly violated a clearly established constitutional right such that he is not entitled to qualified immunity. Therefore, the court will grant the Defendants' MSJ and dismiss this case.

## IV.   Conclusion and Order

Based on the foregoing, the court **ORDERS** as follows:

1.   Defendants Detention Officer Channing Hill and Detention Officer Teroji Kelly's Motion for Summary Judgment (Docket Entry No. 48) is **GRANTED**.

2.   This civil action will be dismissed with prejudice.

**The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties of record.**

SIGNED at Houston, Texas, on this 21st day of January, 2021.

                                   _____
                                        SIM LAKE
                        SENIOR UNITED STATES DISTRICT JUDGE

-24-